**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELINDA MORGAN,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINA FOW, individually and in her official capacity, Police Officer, Pennsylvania State Police – Troop H, *et al.*,<br><br>Defendants. | : | Civil No. 1:25-CV-01992<br><br><br><br><br><br><br><br><br><br>Judge Jennifer P. Wilson |

**MEMORANDUM**

Plaintiff Melinda Morgan alleges Defendants Pennsylvania State Police Troopers Christina Fow and David Highhouse (collectively, "Defendants")[1] pulled her over on her way home from work, and then took multiple unwarranted actions that trigger her lawsuit. (Doc. 1, ¶¶ 10–15.) Morgan brings Constitutional, federal statutory, and state law tort claims against Defendants. (*Id.* ¶¶ 29–77.) Defendants moved to partially dismiss her complaint, Doc. 14, and that motion is before the court. For the reasons explained below, the court will grant in part and deny Defendants' motion.

---

[1] Morgan originally named Troop H of the Pennsylvania State Police as a defendant in this action, but the parties stipulated to the dismissal of Troop H and two counts of Morgan's complaint, Counts IV and V, Doc. 1, ¶¶ 45–53, without prejudice. (*See* Doc. 21, p. 1.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Morgan works at the Cumberland County Prison in Cumberland, Pennsylvania, as a "Block Nurse." (Doc. 1, ¶ 10.) She is a licensed practical nurse, and her responsibilities include administering medication to inmates. (*Id.*)

Morgan left work around 11:15 p.m. on October 27, 2023. (*Id.*, ¶ 11, Doc. 22, p. 1.) On her way home, she noticed a police vehicle pulled off to the side of the highway with another car. (Doc. 1, ¶ 11.) She moved over into another lane as she passed to give the police officer space. (*Id.*) Five miles down the road, Fow pulled Morgan over and asked for her license and registration. (*Id.* ¶¶ 12–13.) Morgan told Fow her registration was expired. (*Id.* ¶ 13.) Fow accused Morgan of "failing to stay in her lane" when she previously moved over to pass the stopped police vehicle. (*Id.*)

Fow then asked Morgan if she had been drinking; Morgan said she had not. (*Id.* ¶ 14.) Nonetheless, Fow and Highhouse removed Morgan from her car and had her take breathalyzer and physical sobriety tests. (*Id.*) Morgan's breathalyzer test was negative, and she passed all but one sobriety test. (*Id.* ¶ 15.) Fow handcuffed Morgan and told her she was being arrested for driving under the

---

[2] The court accepts all factual allegations in the complaint as true when ruling on a Federal Rule of Civil Procedure 12(b)(6) motion. *Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022) (quoting *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)).

influence, "taking too long to answer a question, and overall demeanor." (*Id.*) Morgan repeatedly told Defendants she worked as a nurse at Cumberland County Prison. (*Id.*) Defendants then drove her to Cumberland County Prison. (*Id.* ¶ 16.)

At the prison, Morgan's coworkers performed her intake and collected a sample of her blood. (*Id.* ¶ 17.) Fow told the warden on duty that Morgan was "on heroin" in front of Morgan's coworkers, her supervisors, and inmates. (*Id.* ¶ 18.) Morgan offered to undergo "any other available testing" to prove she was not under the influence. (*Id.* ¶ 19.) The prison immediately suspended her from her nursing duties pending the result of the blood test. (*Id.*)

Morgan was released from prison on her own recognizance early the next day. (*Id.* ¶ 20; Doc. 22, p. 1.) She contacted Troop H of the Pennsylvania State Police Department ("Troop H") to get an incident number for her arrest the night before, but Troop H refused to give her information. (Doc. 1, ¶ 21.) She also paid for the release of Defendants' body camera footage. Although Troop H confirmed it received the check, it never cashed it. (*Id.*) Meanwhile, rumors about Morgan's alleged drug use spread throughout Cumberland County Prison. (*Id.* ¶ 22.) She repeatedly asked Troop H for her blood test results, but Troop H did not respond. (*Id.*)

About a month passed. (*Id.* ¶ 23.) Morgan's supervisor and the Warden of Cumberland County Prison obtained her blood test results, which showed she had

not been under the influence of drugs when Defendants arrested her. (*Id.*) Morgan returned to work immediately, where her patients bullied and harassed her about her alleged drug use. (*Id.* ¶ 24.) Her coworkers told her that rumors that she was addicted to heroin had spread throughout the prison. (*Id.*)

Fow only cited Morgan for driving with an expired registration. (*Id.* ¶ 26.) Morgan pleaded guilty to that charge, paid the fine, and confirmed it was the only charge she faced stemming from her October 27, 2023 arrest. (*Id.* ¶¶ 25–26.)

Morgan sued Fow, Highhouse, and Troop H on October 22, 2025. (Doc. 1.) Relevant here, her complaint asserts the following claims:

1) A Fourth Amendment unreasonable search and seizure claim against Fow and Highhouse brought under 42 U.S.C. § 1983, Doc. 1, ¶¶ 29–35 ("Count I");

2) A Fourteenth Amendment procedural due process claim against Fow and Highhouse brought under 42 U.S.C. § 1983, Doc. 1, ¶¶ 36–39 ("Count II");

3) A conspiracy to violate civil rights claim against Fow and Highhouse brought under 42 U.S.C. § 1985, Doc. 1, ¶¶ 40–44 ("Count III");

4) A false arrest and false imprisonment claim against Fow and Highhouse brought under Pennsylvania law, Doc. 1, ¶¶ 54–58 ("Count VI");

5) A defamation claim against Fow brought under Pennsylvania law, Doc. 1, ¶¶ 59–63 ("Count VII");

6) An intentional infliction of emotional distress ("IIED") claim against Fow and Highhouse brought under Pennsylvania law, Doc. 1, ¶¶ 64–67 ("Count VIII");

7) A negligent infliction of emotional distress ("NIED") claim against Fow and Highhouse brought under Pennsylvania law, Doc. 1, ¶¶ 68–71 ("Count IX"); and

8) An assault and battery claim against Fow and Highhouse brought under Pennsylvania law, Doc. 1, ¶¶ 72–77 ("Count X").

Defendants moved to partially dismiss Morgan's complaint under Federal Rule of Civil Procedure 12(b)(6) and filed a brief in support of that motion. (Docs. 14, 16.) Morgan filed a brief in opposition; Defendants did not file a reply. (Doc. 18.) The motion is ripe for disposition, and the court analyzes the parties' arguments below.

## Jurisdiction and Venue

Morgan's complaint brings several claims arising under federal law, and her state law claims are substantially related to those federal claims, so the court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). Venue is proper in this district under 28 U.S.C. § 1391(b), because Defendants allegedly work and reside in this district and the events alleged in the complaint occurred here.

## Standard of Review

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting

*Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3rd Cir. 2020).

## DISCUSSION

Defendants first argue that they are entitled to Eleventh Amendment Sovereign Immunity in their official capacities. (Doc. 16, p. 7.)[3] Then, they argue the court should dismiss specific portions of Count I. (*Id.* at 9–11.) After that, they argue the court should dismiss Count II, Count III, and all of Morgan's state-law claims, Counts VI–X, in their entirety. (*Id.* at 11–20.) The court addresses each argument in turn.

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

### A. Morgan's Official Capacity Claims are Barred by Eleventh Amendment Sovereign Immunity.

Defendants argue that Eleventh Amendment sovereign immunity bars Morgan's claims asserted against them in their official capacity. (Doc. 16, p. 7.)[4] Morgan does not respond to this argument specifically, but she appears to confirm she intends to sue Defendants in their official and individual capacities in every claim presented in her complaint. (*See* Doc. 18, p. 19 ("In this matter, the Defendant Police Officers were both alternatively named in the Complaint in their official and individual capacities. This was done specifically for the state tort claims alleged.").)[5]

The Eleventh Amendment to the United States Constitution immunizes states, their agencies, and state officials acting in their official capacity against

---

[4] The Third Circuit treats Eleventh Amendment sovereign immunity as an affirmative defense. *See Parker v. N.J. Motor Vehicle Comm'n*, 158 F.4th 470, 477 n.24 (3d Cir. 2025) (citing *Christy v. Penn. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)). The court may consider affirmative defenses "at the motion to dismiss stage if the defenses are 'apparent on the face of the complaint.'" *Kendall v. Lancaster Expl. & Dev. Co., LLC*, 323 F. Supp. 3d 664, 676 n.67 (M.D. Pa. 2018) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

[5] The United States Court of Appeals for the Third Circuit has reviewed motions to dismiss on Eleventh Amendment immunity grounds under both the Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1) standards. *Compare Patterson v. Pa. Liquor Control Bd.*, 915 F.3d 945, 950 (3d Cir. 2019) (analyzing an Eleventh Amendment issue under Rule 12(b)(6)) *with Bradley v. W. Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 649 (3d Cir. 2018) (analyzing an Eleventh Amendment immunity issue on an appeal of a Rule 12(b)(1) challenge). Defendants moved to dismiss under Rule 12(b)(6), so the court applies that standard here. *See Est. of McKloskey v. Twp.*, No. 15-4171, 2017 WL 2600456, at *1 (D.N.J. June 15, 2017) (first citing *Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999); and then citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir .1996)).

suits in federal court seeking damages.[6] U.S. Const. amend. XI; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Tigue v. Pa. State Police*, No. 3:23-CV-00130, 2023 WL 7130622, at *6 (M.D. Pa. Oct. 30, 2023) (quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (citing *Graham*, 473 U.S. at 165–67). This immunity may apply to state officials sued in their official capacity because "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent . . .'" *Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (quoting *Graham*, 473 U.S. at 165–66).

But, exceptions apply. The Eleventh Amendment does not bar a suit in federal court against states, state agencies, or state officials acting in their official capacity if the state waives its immunity by consenting to suit or if Congress abrogates a state's immunity. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) (citing *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002)).

The state agency here is the Pennsylvania State Police. "The Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania," so it is entitled to

---

[6] A plaintiff may sue a state official in their official capacity for prospective injunctive or declaratory relief under the exception to Eleventh Amendment sovereign immunity established by *Ex parte Young*, 209 U.S. 123, 155–56 (1908) when certain conditions are present. *Merritts v. Richards*, 62 F.4th 764, 771 (3d Cir. 2023). The court discerns no request for prospective declaratory or injunctive relief in Morgan's complaint, so *Young* does not apply here. (*See* Doc. 1, ¶¶ 29–77.)

Eleventh Amendment immunity. *Frein v. Pa. State Police*, 47 F.4th 247, 257 (3d Cir. 2022); *Atkin v. Johnson*, 432 F. App'x 47, 48 (3d Cir. 2011) (per curiam). Accordingly, Morgan's official-capacity claims against Defendants are barred by the Eleventh Amendment unless an exception applies.

Neither exception applies. Pennsylvania has not consented to suit in federal court. 42 Pa. Cons. Stat. § 8521(b). And Congress did not abrogate the states' Eleventh Amendment immunity by passing 42 U.S.C. § 1983. *Downey*, 968 F.3d at 310 (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Nor did it abrogate the states' Eleventh Amendment immunity by passing § 1985. *See Collins v. Sload*, 212 F. App'x 136, 140 n.5 (3d Cir. 2007) (per curiam); *Galvani v. Pennsylvania*, No. 1:08-CV-0393, 2008 WL 4821748, at *5 (M.D. Pa. Nov. 4, 2008) (collecting cases), *aff'd*, 329 F. App'x 344 (3d Cir. 2009); *Owens v. Armstrong*, 171 F. Supp. 3d 316, 330 (D.N.J. 2016).[7] Accordingly, courts dismiss both § 1983 and § 1985 claims brought against state officials in their official capacity. *See Conway v. Rivello*, No. 3:24-CV-427, 2025 WL 308129, at *6 (M.D. Pa. Jan. 27, 2025) (dismissing a § 1983 claim against an official-capacity defendant on sovereign immunity grounds); *Boykins v. N.J. Transit*, No. 23-2514, 2025 WL 786334, at *3

---

[7] *See also Rosas v. Univ. of Tex. at San Antonio*, 793 F. App'x 267, 272 (5th Cir. 2019) (first citing *McCardell v. U.S. Dep't of Hous. and Urban Dev.*, 794 F.3d 510, 522 (5th Cir. 2015); and then citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (per curiam)) (recognizing that Congress did not abrogate state sovereign immunity for § 1985 claims).

(D.N.J. Mar. 11, 2025) (dismissing a § 1985 claim against an official-capacity plaintiff on Eleventh Amendment immunity grounds).

Moreover, courts recognize that Eleventh Amendment sovereign immunity bars state tort law claims against individual state officials sued in their official capacity for money damages because Pennsylvania has not consented to being sued in tort in federal court, 42 Pa. Cons. Stat. § 8521(b), and congress did not abrogate Pennsylvania's sovereign immunity as to state-law tort claims. *Clemente v. Dep't of Transp.*, No. 2:25-CV-414, 2025 WL 1371378, at *4 (W.D. Pa. May 12, 2025) (recognizing that state tort law claims against a state agency in federal court are barred by the Eleventh Amendment), *aff'd as modified*, No. 25-1967, 2025 WL 3043374 (3d Cir. Oct. 31, 2025) (per curiam); *Tindell v. Beard*, 351 F. App'x 591, 595 (3d Cir. 2009) (per curiam) (first citing 42 Pa. Cons. Stat. § 8521(b); and then citing *Chittister v. Dep't of Cmty. & Econ. Dev.,* 226 F.3d 223, 226–27 (3d Cir. 2000)) ("To the extent that Tindell alleged a state law tort claim, sovereign immunity protects the DOC defendants from being sued in their official capacities in federal court.").

Based on these principles, the court finds Eleventh Amendment sovereign immunity bars all of Morgan's claims asserted against Defendants in their official capacities. (Doc. 1, ¶¶ 29–77.) Eleventh Amendment immunity is a "threshold, nonmerits issue," so the court will dismiss all of Morgan's official capacity claims

without prejudice. *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007)). The court now turns to Morgan's claims against Defendants in their individual or personal capacities.

**B. It is Not Clear That Morgan Voluntarily Consented to the Blood Draw, so The Court Will Deny Defendants' Motion to Dismiss Count I in Part.**

Morgan alleges that Cumberland County Prison officials collected a sample of her blood when Defendants brought Morgan to the prison for post-arrest "intake." (Doc. 1, ¶ 17.) In Count I, Morgan alleges that the "invasive testing and warrantless blood draw upon Plaintiff was an unreasonable search" under the Fourth Amendment to the United States Constitution, U.S. Const. amend. IV, so Defendants violated her Fourth Amendment rights. (*Id.* ¶ 34.)[8]

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A blood draw is a search. *See Missouri v. McNeely*, 569 U.S. 141, 148 (2013). "A search conducted without a warrant issued upon probable cause is presumptively unreasonable" unless an exception to that general rule applies. *United States v. Williams*, 898 F.3d 323, 329 (3d Cir. 2018) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)) (citation modified).

[8] Count I alleges other unlawful searches, Doc. 1, ¶¶ 29–35, but Defendants only challenge the portion based on the blood draw. (Doc. 16, pp. 9–10.)

One exception is consent; police need neither a warrant nor probable cause to search an individual who consents to be searched. *United States v. Birry*, 188 F.4th 660, 665 (3d Cir. 2026) (quoting *United States v. Wilson*, 413 F.3d 382, 388 (3d Cir. 2005)); *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (quoting *Schneckloth*, 412 U.S. at 219). "The legal bounds of a consensual search are what the typical reasonable person would have understood by the exchange between the officer and the suspect." *Birry*, 188 F.4th at 665 (quoting *Williams*, 898 F.3d at 329) (citation modified).

Consent to a search is only valid if it is given voluntarily. *United States v. Romero*, 559 F. Supp. 3d 437, 450 (W.D. Pa. 2021) (quoting *United States v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988)). The court considers the totality of the circumstances to determine whether an individual voluntarily consented to a search. *Morency v. City of Allentown*, No. 20-3469, 2021 WL 3719220, at *4 (3d Cir. Aug. 23, 2021) (quoting *Schneckloth*, 412 U.S. at 224) (citing *Price*, 558 F.3d at 278). Factors the court considers when evaluating voluntariness include "the age, intelligence and education of the person giving consent, whether they were advised of their constitutional rights, and whether any questioning preceding the consent was repeated and prolonged." *Id.*; *see also United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (noting that the totality of the circumstances inquiry also includes an examination of "the setting in which the consent was obtained" as

well as "the parties' verbal and non-verbal actions"). No factor is dispositive, and the Government must show that the consent was voluntary. *Morency*, 2021 WL 3719220, at *4 (quoting *Price*, 558 F.3d at 277–78)).

Defendants claim Morgan consented to the blood draw, so the blood draw did not qualify as an unreasonable search under the Fourth Amendment. (Doc. 16, p. 9.) Morgan's complaint states that, after Defendants took her to Cumberland County prison and she had her blood drawn, she "immediately offered to perform any other available testing that would" prove she was not under the influence of drugs. (Doc. 1, ¶ 19.) Defendants argue Morgan consented to the blood draw based on that allegation, so her Fourth Amendment claim as to the blood draw fails. (Doc. 16, pp. 9–10.)

In response, Morgan argues that Defendants lacked probable cause to arrest her for driving under the influence. (Doc. 18, pp. 11–12.) And she argues that Defendants' actions, specifically Fow's statement that Morgan was "on heroin," coerced her into submitting to the blood draw; she did not freely consent. (*Id.* at 12–13 ("This outrageous lie, on top of everything else that was transpiring, caused Ms. Morgan to offer anything to disprove it. In that moment, Ms. Morgan was scared and had no choice but to submit to a blood test.").) Therefore, according to Morgan, the blood draw was an unreasonable search under the Fourth Amendment.

Construing the facts of the complaint in Morgan's favor, the court cannot determine that she voluntarily consented to the warrantless blood draw. (Doc. 1, ¶ 34.) Voluntariness of consent to a search is a question of fact that must be answered by evaluating the totality of the circumstances. *Givan*, 320 F.3d at 459 (quoting *Schneckloth*, 412 U.S. at 227). The court cannot conclude, at this stage and without further factual development, that Morgan's apparent consent to the blood draw or other testing was truly voluntary when, by the time the search occurred, she had undergone several field sobriety tests, been transported to Cumberland County Prison, subjected to intake in front of her coworkers, and accused of being addicted to heroin in front of her boss, colleagues, and patients. (Doc. 1, ¶¶ 12–28); *see Morency*, 2021 WL 3719220, at *4 (noting that courts consider whether an individual was repeatedly questioned in determining whether that individual voluntarily consented to a search). Therefore, the court will deny Defendants' motion to dismiss this portion of Count I.

**C. Morgan Does Not Raise a Fourteenth Amendment Claim Alleging an Unreasonable Search and Seizure.**

Defendants claim Count I of Morgan's complaint raises both Fourth and Fourteenth Amendment claims alleging an unreasonable search and seizure. (Doc. 16, p. 10.) They argue the court should dismiss the Fourteenth Amendment claim because claims alleging an unreasonable search or seizure can only be brought pursuant to the Fourth Amendment. (Doc. 16, pp. 10–11.) Morgan responds that

Defendants misunderstand Count I. (Doc. 18, p. 13.) She clarifies that Count I raises a Fourth Amendment claim and does not rely on the Fourteenth Amendment. (*Id.*)

Morgan alleges Defendants "acted under color of state law to deprive Plaintiff of certain constitutionally protected rights guaranteed under the Fourth Amendment applicable to state actors through the Fourteenth Amendment to the Constitution of the United States of America." (Doc. 1, ¶ 30.) Morgan is correct; the Fourth Amendment applies to the states through the Fourteenth Amendment. *Bailey v. United States*, 568 U.S. 186, 192 (2013). The Fourteenth Amendment appears nowhere else in Count I. (Doc. 1, ¶¶ 29–35.) Therefore, it is clear to the court that Morgan brings her unreasonable search and seizure claim under the Fourth—not the Fourteenth—Amendment. (*See id.*) Accordingly, the court will deny Defendants' motion to dismiss Count I in part on these grounds.

**D. The Court Will Grant Defendants' Motion to Dismiss Morgan's Fourteenth Amendment Procedural Due Process Claim, Count II.**

Morgan alleges Defendants' actions during her arrest and detention violated her Fourteenth Amendment due process rights. (Doc. 1, ¶¶ 36–39.) Specifically, she alleges Defendants deprived her of a protected liberty interest without due process by defaming her and causing her suspension from work. (*Id.* ¶¶ 38–39.) In her brief in opposition to the motion to dismiss, she describes her due process claim as a "stigma-plus" claim. (*See* Doc. 18, p. 14.)

Morgan does not explain whether she intends to bring a procedural or a substantive due process claim under the Fourteenth Amendment. (*See* Doc. 1, ¶¶ 36–39.) However, several courts within the Third Circuit have recognized that stigma-plus due process claims may only be brought as procedural, not substantive, due process claims. *Abrantes v. Smith*, No. 1:23-CV-01324, 2024 WL 3969685, at *7 & n.3 (M.D. Pa. Aug. 28, 2024) (collecting cases); *Miller v. Fayette Cnty.*, No. 2:15-CV-1590, 2016 WL 1555526, at *4 (W.D. Pa. Apr. 18, 2016) (quoting *Segal v. City of N.Y.*, 459 F.3d 207, 213 (2d Cir. 2006) (citing *Plude v. Adams*, No. 3:12CV69, 2013 WL 943730, at *4 (D. Conn. Mar. 11, 2013)). And in her brief in opposition to the motion to dismiss, Morgan cites *Hill v. Borough of Kutztown*, 455 F.3d 225, 238 (3d Cir. 2006), in which the Third Circuit addressed a stigma-plus procedural due process claim. (Doc. 18, p. 14.) Accordingly, the court construes Morgan's complaint to bring a procedural due process claim.

To state a Fourteenth Amendment procedural due process claim, a plaintiff must allege (1) they were deprived of life, liberty, or property; (2) by a state actor; (3) without due process of law. *Parker v. N.J. Motor Vehicle Comm'n*, 158 F.4th 470, 481 (3d Cir. 2025) (first citing *Reed v. Goertz*, 598 U.S. 230, 236 (2023); then citing *Blum v. Yaretsky*, 457 U.S. 991, 1002–03 (1982); and then citing U.S. Const. amend. XIV, § 1). The first element is at issue here; Defendants challenge whether Morgan asserts a protected liberty interest in her reputation through a stigma-plus

theory. (Doc. 16, p. 12.) To satisfy the stigma prong of that type of claim, Morgan must allege that Defendants made false, "purportedly stigmatizing" statements publicly. *Hill*, 455 F.3d at 236. To satisfy the "plus" prong of the stigma-plus test, she must allege a "deprivation of some additional right or interest." *Id.* "In the public employment context . . .[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Id.* Being fired still qualifies as the plus even if the plaintiff "lacks a property interest in the job he lost." *Id.* at 238.

Defendants argue Morgan does not state a due process claim for several reasons. (Doc. 16, pp. 12–15.) First, Defendants are not Morgan's employers, so they had no control over her suspension from work at Cumberland County Prison. (*Id.* at 14–15.) Second, neither Defendant made a defamatory statement about Morgan because Fow's "allegation" that Morgan was under the influence was "part of the intake process" at Cumberland County Prison; Fow was merely "explain[ing] why they were there." (*Id.* at 14.) Third, Defendants argue that Morgan's with-pay suspension is not as drastic a sanction as being fired, so she cannot satisfy the plus element of the stigma-plus test. (*Id.* at 15.)

In response, Morgan argues that she need not allege she was fired to pass the plus prong of the stigma-plus test. (Doc. 18, pp. 14–15.) She alleges she was

suspended from work for a month "after being falsely accused of being a heroin addict by police officers at her place of employment. When she returned to work she was harassed and bullied by prison inmates." (*Id.* at 15.) She argues these circumstances combine with Fow's statements to satisfy the stigma-plus test and state a due process claim for the deprivation of a protected liberty interest. (*Id.* at 15–16.) Moreover, she claims it does not matter that Defendants were not her employers, and argues that Defendants provide no authority in support of their argument that "a due process violation of one's liberty interest via reputational damage is limited to an employer/employee relationship." (*Id.* at 15–16.)

Morgan claims a stigma-plus claim alleging "[a]n employer suspend[ed] an employee for conduct unrelated to employment should be evaluated . . ." differently from a claim alleging that the employer is responsible for both the stigma and the plus. (*Id.* at 16.) But apart from *Hill*, 455 F.3d at 238, she cites no authority in support of any of her stigma-plus arguments. (Doc. 18, pp. 14–16.) *Hill* suggested that a stigma-plus claim in the public employment context exists where the employer creates both the stigma and the plus. 455 F.3d at 236 ("In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee

of a protected liberty interest." (quoting *Codd v. Velger,* 429 U.S. 624, 628 (1977))).

The parties do not present, and the court has not found, a case in which the Third Circuit has explicitly held that a stigma-plus claim brought in the public employment context must allege that the same person or entity—the employer—both created the stigma and committed the additional deprivation, or the "plus." *See Mucy v. Nagy*, No. 20-1950, 2021 WL 3370792, at *7–8 (W.D. Pa. Aug. 3, 2021) (recognizing that the Third Circuit has not decided the issue). But multiple district courts throughout the Third Circuit have so held. *Grimm v. City of Uniontown*, No. 06-1050, 2008 WL 282344, at *30 (W.D. Pa. Jan. 31, 2008) ("The Defendants in this case were not in a position to take any adverse employment action against Plaintiff because they did not employ him and the entity that did . . . is not named as a defendant in this case."); *Bassetti v. Boyertown Area Sch. Dist.*, No. 17-1137, 2017 WL 3480977, at *5–6 (E.D. Pa. Aug. 14, 2017) (noting that *Hill*, 455 F.3d at 236, "can be read to imply that the actions constituting the stigma and the plus must both be performed by the defendant-employer" and ultimately holding that because the plaintiff did not allege that "Boyertown (the entity that she claims is responsible for the stigmatizing statements) terminated her," her stigma-plus claim failed), *dismissed*, No. 17-2946, 2018 WL 1224404 (3d Cir. Mar. 5, 2018); *Carusone v. Kane*, No. 1:16-CV-1944, 2017 WL 5188291, at *7 (M.D. Pa.

Nov. 9, 2017) (citing *Bassetti*, 2017 WL 3480977, at *6) (finding that "Plaintiff [could not] maintain his stigma-plus claims against Defendants because they did not terminate him from his employment"); *Mazur v. City of Pittsburgh*, No. 18-1018, 2019 WL 3068215, at *7 (W.D. Pa. July 12, 2019) ("Mazur seeks relief from the incorrect entity. Mazur alleges that Nee made a stigmatizing statement about her to her employer. The harm of which she complains, however, was caused by the SWVC's adverse employment actions against her."); *Mucy*, 2021 WL 3370792, at *7–8 ("Plaintiff has not cited—nor has this Court's research uncovered—a case in which a court within the Third Circuit found that the 'plus' element was adequately pleaded when the plaintiff's employment interests were impacted by a third party rather than the defendants.").

Considering this persuasive authority, the Third Circuit's discussion of stigma-plus claims in the public employment context in *Hill*, and the fact that Morgan did not cite contrary precedent, the court joins those district courts that have found that a plaintiff must allege that the same person or entity must be responsible for both the stigma and the plus when asserting a stigma-plus claim in the public employment context. Here, Fow made the allegedly stigmatizing statement, but Cumberland County Prison (a non-party) suspended Morgan, and non-party individuals at the prison treated her poorly when she returned to work.

(Doc. 1, ¶¶ 36–39.) Thus, the court will grant Defendants' motion to dismiss Morgan's due process claim, Count II, without prejudice. (*Id.*)

**E. The Court Will Deny Defendants' Motion to Dismiss Morgan's Conspiracy to Violate Civil Rights Claim, Count III.**

Count III of Morgan's complaint alleges that Defendants conspired to infringe on her "constitutional right to be free from unreasonable search and seizure, due process, right to liberty, the right to privacy and right to be free from false statements and defamation from government actors" in violation of 42 U.S.C. § 1985. (Doc. 1, ¶ 44.)

The court assumes Morgan intends to raise a civil conspiracy claim under § 1985(3), which in relevant part prohibits two or more people from conspiring "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). A § 1985(3) claim has the following elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983).

Defendants argue that, when they arrested Morgan and took her to Cumberland County Prison, they were acting within the scope of their official

duties as Pennsylvania State Police troopers. (Doc. 16, p. 16.) And because they work for the same entity, Morgan cannot allege that they conspired, as two separate individuals, to violate her Constitutional rights. (*Id.*) Morgan claims Defendants only cite authority concerning "private corporations operating in a public manner," and that precedent from the Third Circuit recognizes that two police officers working in the same department may conspire to violate an individual's civil rights. (Doc. 18, pp. 16–17 (citing *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–95 (3d Cir. 2018).)

Defendants invoke the "intracorporate-conspiracy doctrine." (Doc. 16, p. 16.) That doctrine states that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (citing *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 769–771 (1984)). In *Ziglar*, the Supreme Court noted that "[n]othing in this opinion should be interpreted as either approving or disapproving the intracorporate-conspiracy doctrine's application in the context of an alleged § 1985(3) violation." *Id.* at 153.

The court is reluctant to dismiss Plaintiff's civil conspiracy claim under the intracorporate-conspiracy doctrine at the motion-to-dismiss stage for several reasons. First, as explained above, the Supreme Court in *Ziglar* did not decide whether the intracorporate-conspiracy doctrine applies to § 1985(3) claims. 582

U.S. at 153. And second, even if the doctrine applies in this case, the Third Circuit has recognized that an exception to it applies when two officers of the same corporate entity act in a personal, rather than an official, capacity to conspire with each other or the corporate entity itself. *See Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1259 (3d Cir. 1978) (en banc) ("[W]e do not follow the line of cases adopting the rule that concerted action among corporate officers and directors cannot constitute a conspiracy under § 1985(3)."), *vacated on other grounds*, 442 U.S. 366 (1979); *Robison v. Canterbury Vill., Inc.*, 848 F.2d 424, 431 (3d Cir. 1988) ("[A] section 1985(3) conspiracy between a corporation and one of its officers may be maintained if the officer is acting in a personal, as opposed to official, capacity, or if independent third parties are alleged to have joined the conspiracy."); *Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999) ("Along these lines, courts that have followed the doctrine allow an exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment."); *Abadi v. Target Corp.*, No. 23-1050, 2023 WL 4045373, at *1 (3d Cir. June 16, 2023) (quoting *Robison*, 848 F.2d at 431).

Accordingly, district courts in the Third Circuit have held that the intra-corporate conspiracy doctrine "cannot be used to shield liability when police officers conspire with one another in their individual capacities." *Cole v. Encapera*, No. 15-104, 2015 WL 8528449, at *8 (W.D. Pa. Dec. 11, 2015) (first

citing *Minor v. Cumberland Twp.*, No. 13-1821, 2015 WL 5691120, at *2 (W.D. Pa. Sept. 28, 2015); and then citing *Sawl v. Borough of W. Kittanning*, No. 10-008, 2010 WL 1444868, at *7 (W.D. Pa. Apr. 9, 2010)) (ruling on a 42 U.S.C. § 1983 conspiracy claim). And construing the facts of Morgan's complaint in her favor, it is not clear that Defendants acted only within the scope of their duties.

Third and finally, courts in this Circuit are reluctant to decide whether the intracorporate-conspiracy doctrine applies to a particular claim at the motion-to-dismiss stage, because doing so involves a factual inquiry. *Page-Jones v. Berfield*, No. 1:20-CV-1042, 2020 WL 7480649, at *5 n.2 (M.D. Pa. Dec. 18, 2020); *Cole*, 2015 WL 8528449, at *8 (quoting *Logan v. Salem Baptist Church of Jenkintown*, No. 10-cv-0144, 2010 WL 3364203, at *5 (E.D. Pa. Aug. 17, 2010)). The court will deny Defendants' motion to dismiss Morgan's § 1985(3) civil conspiracy claim on the basis of the intracorporate-conspiracy theory at this stage.

### F. The Court Will Dismiss Two of Morgan's Tort Claims, Count VI and Count X, as Barred by State Statutory Sovereign Immunity, and Will Deny Defendants' Motion to Dismiss the Remaining Three Tort Claims, Counts VII, VIII, and IX.[9]

Morgan brings a false arrest and false imprisonment claim (Count VI), an IIED claim (Count VIII), an NIED Claim (Count IX), and an assault and battery

[9] Courts appear to consider motions to dismiss on Pennsylvania statutory sovereign immunity grounds under Rule 12(b)(6). *See Witters v. Smith*, 736 F. Supp. 3d 238, 248 (M.D. Pa. 2024); *Thompson v. Safa*, No. 25-2664, 2026 WL 2641351, at *1 (3d Cir. Sept. 8, 2026) (per curiam).

claim (Count X) against Defendants under Pennsylvania law. (Doc. 1, ¶¶ 54–77.) She also alleges a defamation claim under Pennsylvania law against Fow (Count VII). (*Id.* ¶¶ 59–63.) Defendants argue the court should dismiss the state tort claims Morgan brings against them because they are entitled to state statutory sovereign immunity under 1 Pa. Cons. Stat. § 2310. (Doc. 16, pp. 16–20.)

That statute, § 2310, entitles Commonwealth of Pennsylvania officials and employees in their official and individual capacities and acting "within the scope of their duties" to sovereign and official immunity. 1 Pa. Cons. Stat. § 2310; *Larsen v. State Employees' Ret. Sys.*, 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008) (quoting *Maples v. Boyd*, No. 03-6325, 2004 WL 1792775, at *9 (E.D. Pa. Aug. 9, 2004)) (citing *Maute v. Frank*, 657 A.2d 985, 986 (Pa. Super. Ct. 1995)). Subject to the scope-of-duty requirement, sovereign immunity bars intentional tort claims. *See Larsen*, 553 F. Supp. 2d at 420; *Brown v. Maxwell*, No. 23-1480, 2024 WL 1209517, at *4 (3d Cir. Mar. 21, 2024). It also bars negligence claims unless they fit into one of the ten specific categories for which the General Assembly has waived sovereign immunity. 42 Pa. Cons. Stat. § 8522(b); *see Smith v. Loysville Youth Dev. Ctr.*, No. 19-3770, 2020 WL 5439547, at *6 (E.D. Pa. Sept. 10, 2020) (quoting *Greenberg v. Caesars Ent. Corp.*, No. 14–4796, 2015 WL 2069411 (E.D. Pa. May 5, 2015)) (noting that the negligence waivers must be interpreted narrowly).

The parties dispute whether Defendants acted within the scope of their official duties when they allegedly committed torts against Morgan. Defendants claim that they acted within the scope of their duties as State Troopers when they arrested Morgan, transported her to Cumberland County Prison, and participated in the intake process, so Morgan's tort claims against them are barred. (Doc. 16, pp. 16–20.) They also argue the court should dismiss Morgan's defamation claim because Fow acted within the scope of her official duties when she explained to the prison officials why she and Highhouse arrested Morgan. (*Id.* at 16–17 (citing *Martin v. City of Reading*, No. 12-CV-03665, 2013 WL 5429358, at *10–11 (E.D. Pa. Sept. 30, 2013).)[10] And they argue that Morgan's NIED claim should be dismissed because it does not fit into any of the ten categories of negligence claims for which the Commonwealth has waived sovereign immunity, so that claim should be dismissed. (*Id.* at 20.)

In response, Morgan argues that Defendants are not entitled to sovereign immunity for actions taken outside the scope of their employment or actions that

[10] The parties address Morgan's defamation claim separately from Defendants' sovereign immunity argument. (Doc. 16, pp. 16–18; Doc. 18, pp. 17–8.) But the case the parties discuss in those sections examines whether a police officer defendant acted within the scope of his official duties when giving a press conference such that state statutory sovereign immunity shielded him from a defamation claim. *Martin*, 2013 WL 5429358, at *10. Accordingly, the court addresses Morgan's defamation claim alongside her other tort claims.

qualify as willful misconduct. (Doc. 18, pp. 19–20.)[11] She claims that when they humiliated and embarrassed her at her place of employment, "show[ed] up to court after issuing a citation for an admitted expired registration," and failed to consider that she had just finished a long shift at work before arresting her, they committed willful misconduct or acted outside the scope of their official duties. (*Id.* at 20.) As for her defamation claim, specifically, Morgan argues that Fow "had no obligation to loudly announce for all to hear why she was bringing Ms. Morgan back to her place of employment in handcuffs," so Fow acted outside the scope of her Trooper duties when she made that statement. (*Id.* at 18.)

To determine whether an individual acted within the scope of their duties, the court asks whether the conduct at issue "(1) was 'of a kind and nature' that the individual was hired to perform; (2) occurred 'within authorized time and space limits'; and (3) was motivated by a purpose to serve the individual's employer."

---

[11] Throughout her brief in opposition to Defendants' motion to dismiss, Morgan cites to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"). (*See* Doc. 18, p. 19 ("[P]ursuant to the Pennsylvania Political Subdivision Tort Claims Act, a state actor is not entitled to immunity for willful misconduct. 42 Pa. C.S.A. § 8550.").) The PSTCA does not apply to state officials. *McDonald-Witherspoon v. City of Phila.*, 481 F. Supp. 3d 424, 457 n.14 (E.D. Pa. 2020), *aff'd*, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021) ("[T]he 'willful misconduct' exception to sovereign immunity on which Plaintiff relies is found in 42 Pa. Cons. Stat. Ann. § 8550, which applies only to local, not Commonwealth, governmental agencies and employees."); *Mathias v. York Cnty.*, No. 1:16-CV-01338, 2017 WL 770610, at *9 (M.D. Pa. Feb. 28, 2017) ("As discussed above, however, and as the case law from the Third Circuit makes clear, probation officials are state, not county, employees. Thus, the Political Subdivision Tort Claim Act, which grants municipalities and municipal officers immunity from liability from state tort claims, is not applicable.")

*Witters v. Smith*, 736 F. Supp. 3d 238, 248 (M.D. Pa. 2024) (quoting *CNA v. United States*, 535 F.3d 132, 146 (3d Cir. 2008)). If the individual uses force, that force must not be "unexpectable by the employer" and not motivated by, for example, personal animus. *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (quoting *Wesley v. Hollis*, No. 03–3130, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007)); *Witters*, 736 F. Supp. 3d at 248.

The scope-of-duty issue normally presents a factual question for the jury to resolve. *Ardo v. Pagan*, 652 F. Supp. 3d 545, 565 (E.D. Pa. 2023) (quoting *Justice v. Lombardo*, 208 A.3d 1057, 1068 (Pa. 2019)). Relying on the allegations in the complaint and the inferences drawn therefrom, the court cannot conclusively determine that Defendants acted within the scope of their employment when they committed the conduct underlying Morgan's defamation (Count VII), IIED (Count VIII), and NIED claims (Count IX), Doc. 1, ¶¶ 59–71. *See Ardo*, 652 F. Supp. 3d at 565; *Palmore v. Clarion Univ. of Pa.*, No. 3:21-CV-00106, 2025 WL 1882837, at *21 (W.D. Pa. July 8, 2025) (Denying defendants' motion to dismiss on sovereign immunity grounds because the court lacked a sufficient factual record to decide the issue). Accordingly, the court will deny Defendants' motion to dismiss these three claims.

The court will dismiss Morgan's false arrest and false imprisonment (Count VI) as well as her assault and battery (Count X) claims without prejudice. (Doc. 1,

¶¶ 54–58, 72–77.) In those claims, Morgan explicitly alleges that Defendants committed the underlying conduct while acting within the scope of their employment. (*Id.* ¶ 55 ("Defendants, acting within the scope of their employment with the Pennsylvania State Police, intentionally arrested and detained Plaintiff without a valid warrant and without probable cause."); *Id.* ¶ 73 ("Defendants, acting under color of state law and within the scope of their employment, caused or directed a blood draw to be performed upon Plaintiff without a valid warrant, medical necessity, or probable cause.").)[12] The Pennsylvania General Assembly has not waived sovereign immunity for intentional tort claims. *Larsen*, 553 F. Supp. 2d at 420; *see Justice*, 208 A.3d at 1066–67. Accordingly, the court dismisses these claims, but it does so without prejudice because amendment is not clearly futile. *See Brown*, 723 F. Supp. 3d at 419.

---

[12] The court notes that early in Morgan's complaint, she alleges that:

> At all relevant times, Defendant Police Officers Fow and Highhouse were duly authorized employees and agents of the Pennsylvania State Police - Troop H who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant Pennsylvania State Police - Troop H.

(Doc. 1, ¶ 7.) Although Morgan incorporated this allegation into her subsequent claims, the court focuses its scope-of-duties analysis at this stage on Morgan's specific allegations related to each claim. (*See* Doc. 1, ¶¶ 72–73.)

## CONCLUSION

The court will grant in part and deny in part Defendants' motion to dismiss for the reasons explained above. An order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 21, 2026